to adopt it, and it stands supported by the authority of other cases. But however this may be, it is clear that a divulsion of the seal by the obligor himself, or by his connivance, without the assent of the obligee, does not avoid the deed. Totty v. Nesbitt, 3 Term R. 153, note c; Shep. Touch. 67. And it has been so decided by this court. Cutts v. U. S. [supra]. And I have no hesitation in declaring, that if the seal is torn off with the assent of the obligee, either by mistake, or by fraud and imposition practised by the obligor, it may still be declared on as a deed, making the proper averment of the facts upon the profert, and the party will be entitled to a recovery. The case of Matison v. Atkinson, cited in a note in 3 Term R. 153, fully supports this doctrine; and if it were of the first impression, I should not hesitate to adopt it. Dealing with this case, therefore, as I am bound to do according to the admitted facts, I must take it to be a case, where the obligors to the bonds have procured the destruction of the seals by the obligee, not merely by a mistake of the facts, but by gross fraud and imposition. See, also, Perrott v. Perrott, 14 East, 423. We may readily see, how this doctrine stands in equity, from what fell from Lord Hardwicke in Skip v. Huey, 3 Atk. 91, 93, whose language meets the present case in its material features. "There are many cases," says his lordship, "where equity will set up debts extinguished at law against a surety, as well as against a principal; as where a bond is burnt or cancelled by accident or mistake, and much stronger, if a principal procure the bond to be delivered up by fraud, in such a case the court would certainly set it up, because he shall not avail himself of the fraud of any of the debtors." Now it appears to me clear, that the doctrine is the same at law as in equity in this respect, whenever, from the nature of its proceedings, a court of law can administer relief.

And this leads me, to what has been the principal objection urged at the bar, viz. that the proper remedy in this case is in equity, and not at law. That effectual relief might be administered, in a case like the present, in equity cannot be doubted (1 Ves. 387, 392, 393. See Atkins v. Farr, 2 Eq. Cas. Abr. 247, 1 Atk. 287, pl. 155; Anon., 2 Atk. 61; Ex parte Greenway, 6 Ves. 812); and it is as certain, that until a comparatively recent period it was supposed that the remedy was exclusively in equity. Such was certainly the supposition of Lord Hardwicke, as appears in Whitfield v. Fausset, 1 Madd. Ch. Prac. 22, 23 [1 Ves. Sr. 387]; East India Co. v. Donald, 9 Ves. 275; and something of the same lurking doubt of the jurisdiction at law yet lingers in the court of chancery. Ex parte Greenway, 6 Ves. 812; East India Co. v.

Boddam, 9 Ves. 464. But whatever difficulties there may have been in the original question, it is now so firmly established, that a remedy exists at law on a bond lost by time and accident, and by parity of reasoning, on a bond destroyed or cancelled by fraud, that it is too late to disturb it. It must be admitted, that the jurisdiction in equity is in general more salutary and less liable to abuse; but the reasoning, that endeavours to establish a concurrent jurisdiction at law, is extremely cogent, and impressive. Read v. Brookman, 3 Term R. 151. I content myself therefore with holding the law on this subject, as I find it, not meaning to doubt, that it would have been equally competent for this court to have sustained a suit for relief on the equity side of its jurisdiction.

A suggestion has been thown out at the bar of the insufficiency of the breach assigned in the declaration. But it appears to me, that this objection is unfounded, for the breach is a direct negative in the very words of the condition. It is certainly good, according to the current of authorities. Heyford v. Reve, Yel. 40; Com. Dig. "Pleader," C, 45; Procter v. Burdet, 3 Lev. 170; Lee v. Johnson, 1 Lutw. p. 115, pl. 326–329. Leave is given to the plaintiff to amend, and to the defendant to withdraw his demurrer, as it is now too broad.

---

### Case No. 16,365a.

UNITED STATES v. The SPEDDEN.

[See Case No. 2,394.]

---

### Case No. 16,366.

UNITED STATES v. SPEEDEN.

[1 Cranch, C. C. 535.] [1]

Circuit Court, District of Columbia. June Term, 1809.

#### GAMING.

The game called "Equality," is a "device" prohibited by Act Md. 1797, c. 110. The words "or other device," are not so loose and vague as to be rejected.

Indictment [against Robert Speeden] for keeping a gambling-device called "Equality," under the Maryland law of 1797, c. 110.

Mr. Law, for defendant, prayed the court to instruct the jury, that the defendant was not liable for the penalty under the act. The words "or other device," being too loose and vague, are to be rejected.

But THE COURT refused; it not being a capital case, and the intention of the law being very clear and plain.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]